## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PAINTERS DC #30 REALTY, LLC,** An Illinois Limited Liability Company, On Behalf of Itself and All Others Similarly Situated, | |
| Plaintiff | No. _____ |
| vs. | |
| **CONSTELLATION ENERGY GENERATION, LLC,** A Pennsylvania Limited Liability Company, | Judge _____ |
| **NORTHERN TRUST CORPORATION**, A Delaware Corporation, | |
| **COMMONWEALTH EDISON COMPANY**, an Illinois Corporation, | |
| And | |
| **NUCLEAR REGULATORY COMMISSION,** an Agency of the United States, | |
| Defendants. | |

### <u>COMPLAINT</u>

Plaintiff, Painters DC #30 Realty, LLC, on behalf of itself and all others similarly situated, brings this action, alleging as follows:

### <u>NATURE OF THE CASE</u>

1.      Commonwealth Edison Company's ("ComEd's") customers have paid several hundred million dollars into two nuclear decommissioning trust funds ("NDTs") established to fund the decommissioning of two nuclear power generation units which it built in Zion, Illinois.

Under Illinois law, any amounts remaining in these trusts after payment of reasonable decommissioning costs are required to be refunded to ComEd and distributed to ComEd's customers as soon as practicable. 220 Illinois Compiled Statutes ("ILCS") 5/8-508.1(c)(3)(ii) and (iii).

2.      The two Zion units were decommissioned in 2023. Approximately $65 million, or more, remains in the trusts (the "NDT remainder"). These remaining amounts are required under ILCS 5/8-508.1(c)(3)(ii) and (iii) and Illinois Commerce Commission Orders to be paid to ComEd and returned to ComEd's customers.

3.      Plaintiffs seek a declaratory judgment and affirmative order that:

- decommissioning is complete;

- with the completion of decommissioning, the Nuclear Regulatory Commission ("NRC") lacks jurisdiction over the NDTs, if it ever had any;

- the current successor of ComEd with respect to the NDTs, Constellation Energy Generation LLC ("CEG"), and the NDT trustee, Northern Trust Corporation ("Northern Trust"), are required to refund the NDT remainder to ComEd or directly to a fund for payment to ComEd's customers pursuant to further order of the Court; and

- if the NDT remainder is paid to ComEd, then ComEd shall pay the money into a fund for payment to ComEd's customers pursuant to further order of the Court.

4.      In addition, Plaintiffs seek affirmative relief against ComEd for breach of fiduciary duties and violation of the Illinois Public Utilities Act, 220 ILCS 5/5-201, because ComEd had a duty to return the excess funds to its customers.

## PARTIES

5.     Painters DC #30 Realty, LLC ("Painters"), is an Illinois limited liability company with its principal place of business in Aurora, Illinois. Painters is an electricity customer of ComEd, and as such has a beneficial interest in the amounts remaining in the Zion trusts under 5/8-508.1(c)(3)(ii) and (iii).

6.     Defendant Northern Trust Corporation is a Delaware corporation with its headquarters in Chicago, Illinois.

7.     Defendant Constellation Energy Generation, LLC is a Pennsylvania limited liability company with its headquarters in Baltimore, Maryland. Constellation Energy Generation was formerly known as Exelon Generation Company, LLC ("Exelon Generation") prior to February 1, 2022. Constellation Energy Generation is a wholly owned subsidiary of Constellation Energy Corporation. CEG was spun off from Exelon Corporation in early 2022, and is now independent from Exelon Corporation. Before this spin off, Exelon Generation and ComEd were affiliated subsidiaries of Exelon.

8.     Defendant Commonwealth Edison Company is an Illinois corporation with its headquarters in Chicago, Illinois. ComEd is a wholly-owned subsidiary of Exelon Corporation. Due to a corporate restructuring in 2001, ComEd transferred ownership of certain generation assets, including the Zion Plant, to Exelon Generation.

9.     Defendant Nuclear Regulatory Commission ("NRC") is an agency of the federal government. NRC is named as a defendant because a declaratory judgment is sought that it does not have the right to vary Illinois law concerning the rights of ComEd's customers concerning the use of the trust funds established under, and as required by, Illinois law.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that it raises issues under federal law regarding the jurisdiction of the NRC explicitly or implicitly asserted by Defendant Constellation Energy Generation, with respect to the funds at issue in this case, as well as having a federal agency as a Defendant. This Court has jurisdiction over any state claims pursuant to principles of pendant jurisdiction.

11.     This Court has venue over this action because the parties acted and do business in this district.

## FACTS

### Regulation of Nuclear Power Plants and Nuclear Fuel

12.     Nuclear power plants are highly regulated due to the dangerous nature of the plants and of nuclear fuel.

13.     As nuclear power plants operate, they use nuclear fuel, which must be periodically removed and replaced as its ability to produce power is spent.

14.     Nuclear power plants are therefore required to safely store spent fuel until it can be permanently disposed.

15.     The United States Department of Energy ("DOE") is required to accept and dispose of spent nuclear fuel. Any costs associated with this spent nuclear fuel, including but not limited to storage, monitoring and disposal, and any remediation of the newly built independent spent fuel installation structure to store it, are required to be paid by the United States Government pursuant to the Nuclear Waste Policy Act of 1982 ("NWPA") and is the obligation of the DOE under standard contracts executed by DOE pursuant thereto

16.     The DOE developed a plan to permanently dispose of spent nuclear fuel in a facility at Yucca Mountain, Nevada.

17.     Spent nuclear fuel was therefore held in independent spent fuel storage installations ("ISFSIs") at the nuclear power plants awaiting DOE accepting the fuel and disposing at Yucca Mountain.

18.     The Yucca Mountain plan has been effectively scuttled due to widespread opposition. The DOE has failed to propose an alternative.

19.     The DOE has failed to take any spent fuel in violation of its statutory and contractual obligations to the holders of such waste.

20.     As a result, nuclear power plants have been forced to temporarily store spent fuel on-site, and store it in ISFSIs, pending the acceptance of spent fuel by the DOE for permanent disposal.

21.     The NRC also regulates the decontamination of nuclear power plants once they have been retired. This process is known as decommissioning.

22.     Decommissioning a nuclear power plant costs hundreds of millions of dollars. The NRC therefore requires financial assurances from nuclear operating licensees that they have sufficient funds to complete the work. This can include providing parental guarantees, setting aside dedicated funds, or establishing nuclear decommissioning trust funds, among other means.

23.     Illinois law requires the establishment of nuclear decommissioning trusts, and requires that any excess funds in those trusts be returned to the electric customers of the utility.

24.     Importantly, neither federal nor Illinois law considers the costs of the storage of spent nuclear fuel to be part of the decommissioning process or properly payable from nuclear decommissioning trusts.

**ComEd Constructs the Zion Plants**

25.     The Zion Nuclear Power Plant was built by ComEd near Zion, Illinois, mid-way between Chicago and Milwaukee, on the shores of Lake Michigan. The plant had two reactors, one of which came on line in December 1973, and the other of which came on line in December 1974.        https://www.constellationenergy.com/our-company/locations/location-sites/zion-station.html (visited May 15, 2025).

26.     The plant's reactors were in operation until 1996-1997. ComEd permanently shut down the two reactors on January 15, 1998, stating that it was not financially feasible to continue operating the plant. *Id.*

**Establishment of the Zion Nuclear Decommissioning Trust Funds**

27.     Between approximately 1998 and 2006, ComEd's customers made specially designated payments to ComEd which ComEd deposited into four separate nuclear decommissioning trust funds which were established by ComEd pursuant to 220 ILCS 5/8-508.1 relating to the future nuclear decommissioning of two nuclear power generation units built by ComEd in Zion, Illinois (the "NDTs").  The two nuclear power generation units were known as Zion Unit 1 and Zion Unit 2.

28.     The NDTs were established and funded by ComEd pursuant to subparagraph (b) and subparagraphs (c)(1) and (2) of 220 ILCS5/8-508.1, which required all public utilities owning nuclear power generating plants in Illinois to establish and fund decommissioning trusts for each nuclear generating plant it owned.[1]  Each nuclear generating unit at a multi-unit site is a separate nuclear plant under the statute.

---

[1] Exelon Generation acknowledges the foregoing. *See, e.g.*, letter from William H. Reiner, Esq., on behalf of Exelon Generation, to the Securities Exchange Commission, dated September 12, 2007, available at https://www.sec.gov/Archives/edgar/vprr/0706/07060334.pdf. ("Exelon SEC

29.     Specifically, 220 ILCS5/8-508.1(b) first provides as follows:

(b) ...  every public utility that owns or operates ... a nuclear power plant shall:

(1) establish 2 decommissioning trusts... and shall hold the decommissioning funds established by the public utility for all nuclear power plants pursuant to subsection (b)(2) of this Section;

(2) establish 2 decommissioning funds for each such plant, each of which shall be held for a plant as a separate account in a decommissioning trust; and

(3) designate an independent trustee … to administer each of the decommissioning trusts

30.     Importantly, subparagraph (c)(3) of 220 ILCS5/8-508.1 then provides the terms under which the assets in the trusts shall be held and distributed.

Specifically, subparagraph (c)(3)(ii) provides as follows:

(ii) Any assets in a nuclear decommissioning trust that exceed the amount necessary to pay the nuclear decommissioning costs of the nuclear power plant for which the decommissioning fund was established shall be refunded to the public utility that established the fund for the purpose of refunds or credits, as soon as practicable, to the utility's customers.

And subparagraph (c)(3)(iii) provides as follows:

(iii) In the event a public utility sells or otherwise disposes of its direct ownership interest, or any part thereof, in a nuclear power plant with respect to which a nuclear decommissioning fund has been established, the assets of the fund shall be distributed to the public utility to the extent of the reductions in its liability for future decommissioning after taking into account the liabilities of the public utility for future decommissioning of such nuclear power plant and the liabilities that have been assumed by another entity. The public utility shall, as soon as practicable, provide refunds or credits to its customers representing the full amount of the reductions in its liability for future decommissioning.

---

Letter"). The Exelon SEC Letter states, *inter alia*,  that the trusts were set up as Illinois trusts, and that they are  governed by the Illinois statute cited by Plaintiffs herein  (*see, e.g.,*  footnotes 35 and 37 (*citing, e.g.*,  220 ILCS 5/8-508.1 c(3)(i)), and states that "Any funds remaining in the  … Trusts … are required under Illinois law to be refunded to Com Ed's customers" (page 8; *see also* page 7 and footnote 7) and "[ComEd] customers … are entitled by law to receive back any funds in excess of actual decommissioning costs") (page 15).

31.     Northern Trust was appointed trustee of the Zion NDTs in accordance with 220 ILCS 5/8-508.1, and remains bound by 220 ILCS 5/8-508.1 with respect to the remaining funds in the NDTs which are the subject of this action.

32.     In 1997, ComEd sought to establish and fund the NDTs by imposing charges on its customers through the Illinois Commerce Commission ("ICC"). The ICC approved ComEd passing on certain decommissioning costs to its customers, but explicitly excluded ISFSI costs, finding that "ComEd should not be allowed to pass these ISFSI costs on to ratepayers." *Commonwealth Edison Company*, ICC Docket 97-0110, Order § III.D (Feb. 19, 1998).

**ComEd Transfers the Zion Plants to CEG**

33.     As part of a corporate reorganization in approximately 2001, ComEd transferred ownership of the Zion Units (and the spent nuclear fuel waste regularly removed from the Zion Units as part of its operation, which was stored in a separate storage facility) to Exelon Generation. Exelon Generation was at that time an unregulated subsidiary of Exelon Corporation and is not a public utility as defined under Illinois law.

**CEG Transfers the Zion Plants to ZionSolutions but Retains Funds**

34.     In 2010, Exelon Generation further transferred ownership of the Zion Units to an independent third-party private company named ZionSolutions LLC ("ZionSolutions").

35.     At the same time, Exelon Generation transferred all but $25 million of the assets of the Northern Trust trust funds to new decommissioning trust funds held by Bank of New York Mellon ("BNY Mellon").

36.     Exelon Generation contended that the retention of the $25 million was necessary to pay for storage of spent fuel despite the fact that the federal government is obligated to pay for the storage and disposal of spent fuel, and that such costs are not appropriately part of "decommissioning" the plant under federal law or 220 ILCS 5/8-508.1.

37.     Indeed, Constellation Energy Generation, as of the end of 2023, has in fact received over $1.3 billion from the DOE to cover such costs across others of the company's 22 nuclear reactors nationwide. According to DOE financial reports, the DOE paid out $8 billion for such storage costs related to spent nuclear fuel through September 2019, and expects to pay billions more in the future.  A Constellation Energy Generation spokesman has acknowledged that Constellation Energy Generation will pay such waste storage costs at another facility with payments from the DOE, the party obligated to pay for same under the NWPA and the DOE's standard contracts, and not from nuclear decommissioning trusts in which retail customers have a residual interest.[2]

**Decommissioning Is Completed, but CEG Continues to Retain NDT Funds**

38.     The NRC found that the decommissioning of the Zion plant was complete on November 8, 2023.

39.     Ownership of the site was returned to CEG by ZionSolutions.

40.     Although the majority of the site can be used for general purposes, a small ISFSI remains adjacent to the site because the DOE refuses to accept spent fuel for disposal.

41.     CEG has represented to the NRC that it is holding the NDT remainder to pay for expenses for spent fuel storage and that it is entitled to hold these funds for those purposes.

**THE 2011 ACTION DOES NOT FORECLOSE THIS SUIT**

42.     In 2011, a suit captioned *Pennington, et al. v. ZionSolutions LLC and Bank of New York Mellon*, Case No. 11-cv-4752, was filed in this Court challenging the administration of separate trusts by ZionSolutions, the independent third party who decommissioned the Zion Units

---

[2] Wallace McKelvey, "Who's  Paying to Decommission Three Mile Island? You Are," Patriot-News, Pennlive, June 3, 2020.

1 and 2, and BNY Mellon, the trustee of those funds, related to the decommissioning of the Zion plant.

43. That lawsuit was dismissed by this Court. *Pennington v. ZionSolutions LLC*, 2013 WL 3895263 (N.D. Ill. July 29, 2013), *aff'd*, 742 F. 2d 715 (7th Cir. 2014).

44. This lawsuit raises different issues in that decommissioning of the Zion Units 1 and 2 is complete and the amounts remaining in the NDT are now required to be paid to ComEd for the benefit of ComEd's customers under Illinois law.

## <u>CLASS ALLEGATIONS</u>

45. Plaintiffs bring this action on their own behalf and on behalf of a class (the "Class") of all ComEd customers entitled to benefit from the provisions of 220 ILCS 5/8-508.1 requiring that the remaining NDT funds be paid to ComEd for the benefit of all of ComEd's customers. The time period for the class of ComEd customers is from the time of the completion of decommissioning on November 8, 2023, to the present, because the funds should have been returned to the current customers.

46. Excluded from the Class are Defendants, any parent, subsidiary, or affiliate of any Defendant; any entity in which any Defendant has or had a controlling interest, or which any Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assign of any Defendant, as well as units of the federal and state government.

47. This action should be certified as a class action for the following reasons:

a. The Class consists of at least tens of thousands of persons, and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

b.      There are questions of law or fact common to each class member that predominate over any questions affecting only individual members, including but not limited to the right of ComEd's customers to the immediate payment of the remaining Zion NDT funds.

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Class.

c.      Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have retained attorneys experienced in complex litigation.

d.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain protection of their rights in the remaining NDT funds and the Class members may be unable to recover the millions of dollars in the remaining NDT funds.

ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions.

iii.      When the common issues have been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.      A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions; and

v.      The lawsuit presents no difficulties that would unduly impede its management by the Court as a class action.

f.      Defendant Northern Trust has acted or failed to act on grounds generally applicable to the Class members, making class-wide injunctive and corresponding declaratory

relief appropriate.

d.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for all parties.

## COUNT I

### (Declaratory Judgment)

48.      Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count I.

49.      Constellation Energy Generation has asserted claims to the remaining NDT funds for payments for expenses of storing spent nuclear fuel waste from the Zion Units and dismantling and decontaminating the independent spent fuel installation built to hold such waste in light of the U.S government's failure to meet its obligations to take and dispose of such waste. Such claims are not valid claims to the remaining NDT funds under 220 ILCS 5/8-508.1, Illinois trust law or otherwise.

50.      Plaintiffs are entitled to a declaration that Constellation Energy Generation does not have valid claims to the remaining NDT funds pursuant to 220 ILCS 5/8-508.1, Illinois trust law or otherwise, and to an injunction prohibiting Defendant Northern Trust from paying any portion of the remaining NDT funds to Constellation Energy Generation.

51.      Constellation has indicated to the NRC, without authority and incorrectly, that it considers the trust funds to be part of Constellation's financial assurance to the NRC that it has sufficient funds available to manage the spent fuel waste and to ultimately dismantle the ISFSI. While the NRC may have authority to control certain conduct of Constellation, as a nuclear waste

license holder, the NRC has no legal right to defeat or interfere with Plaintiffs' rights under Illinois statutory or trust law with respect to the remaining NDT.

52.     Plaintiffs are also entitled to a declaration that the NRC has no legal right under federal law, or otherwise, to defeat or interfere with Plaintiffs' rights under Illinois statutory and trust law to have the trustee pay the remaining NDT funds to ComEd for the benefit of Com Ed's customers.

53.     Absent court intervention, Constellation Energy Generation will dissipate the NDT funds, harming ComEd customers.

Plaintiffs seek a declaratory judgment that:

A.     NRC lacks jurisdiction to supersede Illinois law and to legally order the Zion NDT funds to be used to pay for temporary spent fuel storage;

B.     if Constellation Energy Generation gave the NRC notice of how it intended to use any Zion NDT funds for temporary spent fuel storage, that notice did not make the misuse of the NDT funds legal;

C.     the NRC lacks jurisdiction over the NDTs now that decommissioning is complete;

D.     Constellation Energy Generation must repay the NDTs with interest for funds improperly withdrawn from them;

E.     Northern Trust be enjoined to refuse any further withdrawals from the NDTs by Constellation Energy Generation for costs for the future management or disposal of spent nuclear fuel waste from Zion Units 1 or 2, or relating to the independent spent fuel installation built to hold such waste; and

F.     the NDT funds and repayments from Constellation Energy Generation be returned to ComEd for distributions or credits to Com Ed's customers in accordance with 220 ILCS 5/8-508.1(c)(3)(ii) and (iii).

## COUNT II

### (Action for Payment of Remaining Trust Funds to ComEd for the Benefit of ComEd's Customers)

55.     Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count II.

56.     Pursuant to 220 ILCS 5/8-508.1 and Illinois trust law the remaining Zion NDT funds are required to be paid to ComEd, for the benefit (via payment or credits) of ComEd's customers.

57.     Plaintiffs are entitled to an order directing Defendant Northern Trust to pay the remaining NDT funds to ComEd for the benefit of ComEd's customers pursuant to 220 ILCS 5/8-508.1 and Illinois trust law.

## COUNT III

### Action for Breach of Fiduciary Duty Against ComEd

58.     Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count III.

59.     Illinois law made ComEd a fiduciary for the benefit of its customers of any funds held in the NDTs which were not used for decommissioning.

60.     Now that decommissioning is complete, ComEd is required to return those funds to its customers.

61.     Upon information and belief, ComEd has breached its fiduciary duties by failing to return those funds, and by failing to demand the return of those funds from Constellation Energy Generation or Northern Trust.

62.     Plaintiffs and the Class are entitled to be paid those funds by ComEd.

## COUNT IV

### Action Under the Illinois Public Utilities Act, 220 ILCS 5/5-201, Against ComEd

63.     Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count IV.

64.     220 ILCS 5/5-201 of the Illinois Public Utilities Act provides in part:

In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom.

65.     ComEd had a duty under Illinois law and ICC Orders to ensure the return of the remaining NDT funds after decommissioning was complete.

66.     ComEd has failed to ensure the return of those funds.

67.     Plaintiffs and the Class are entitled to be paid those funds by ComEd.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in this action against Defendants for relief as follows:

(a) certifying this action as a class action, naming Plaintiffs as class representatives, and appointing the undersigned as class counsel;

(b) directing that the remaining Zion NDT funds be paid to Commonwealth Edison Company as required by 220 ILCS5/8-508.1(c)(3)(ii) and (iii), for payment or crediting to Commonwealth Edison Company's customers;

(c) declaring that Northern Trust Company shall not make any payments from the Zion NDT funds to Constellation Energy Generation for costs for the future management or disposal of spent nuclear fuel waste from Zion Units 1 or 2, or relating to the independent spent fuel installation built to hold such waste;

(d) declaring that the NRC has no legal right under federal law, or otherwise, to defeat or interfere with Plaintiffs' rights under Illinois statutory and trust law to have the trustee pay the remaining NDT funds to Commonwealth Edison Company for the benefit of Commonwealth Edison Company's customers;

(e) ordering ComEd to pay its customers an amount equal to the remaining NDT funds, as well as any funds improperly dissipated by Constellation Energy Generation after decommissioning was complete;

(f) awarding costs of suit, attorney's fees and expenses, and interest as appropriate;

(g) granting such other relief as may be proper in this action.


A TRIAL BY JURY IS DEMANDED ON ALL COUNTS SO TRIABLE.

Dated: June 26, 2025   Respectfully submitted,


        By: /s/ *Marvin A. Miller*

        Marvin A. Miller
        Matthew E. Van Tine
        Miller Law LLC
        53 W. Jackson Blvd.
        Suite 1320
        Chicago, IL 60604
        (312) 332-3400
        MMiller@millerlawllc.com
        MVanTine@millerlawllc.com


        Daniel J. Sponseller (*pro hac vice* motion forthcoming)
        Law Office of Daniel J. Sponseller
        409 Broad Street, Suite 200
        Sewickley, Pennsylvania 15143
        (412) 741-4422
        dsponseller@sponsellerlawfirm.com


        Brandon M. Anderson
        Jacobs, Burns, Orlove & Hernandez LLP
        1 N. LaSalle, Suite 1620
        Chicago, IL 60602
        (312) 327-3461
        BAnderson@jbosh.com

        Attorneys for Plaintiff