**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PAINTERS DC #30 REALTY, LLC, An Illinois Limited Liability Company, On Behalf of Itself and All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:25-cv-07176 |
| | ) | |
| CONSTELLATION ENERGY GENERATION, LLC, A Pennsylvania Limited Liability Company, | ) ) ) | |
| | ) | |
| NORTHERN TRUST CORPORATION, A Delaware Corporation, | ) ) | |
| | ) | |
| COMMONWEALTH EDISON COMPANY, an Illinois Corporation, | ) ) | |
| | ) | |
| And | ) | |
| | ) | |
| NUCLEAR REGULATORY COMMISSION, an Agency of the United States, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COMMONWEALTH EDISON COMPANY'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ........................................................................................................................... 4

I. The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) Because There Is No Justiciable Controversy ......................................... 4

II. This Court Additionally Lacks Jurisdiction Over Plaintiff's Claims Against ComEd Pursuant to Rule 12(b)(1) Based on the ICC's Exclusive Jurisdiction .............................................................................................. 7

  A. The ICC Has Exclusive Jurisdiction Over Plaintiff's Requested Relief: Refunds from the NDT Funds by ComEd ................................................................................................ 8

  B. The Filed Rate Doctrine Bars Plaintiff's Claims ..................................... 11

III. The Court Should Dismiss Plaintiff's Claims Against ComEd Pursuant to Rule 12(b)(6) For Failure to State a Claim ....................................... 12

  A. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count III) ............................................................................... 13

  B. Plaintiff Fails to State a Claim for Violations of the PUA (Count IV) ............................................................................................. 15

CONCLUSION..................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)................................................................................................5

*Abbott Labs., Inc. v. Illinois Commerce Comm'n*,
325 Ill. App. 3d 1188 ..........................................................................................2, 9

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937)................................................................................................3

*Aigner v. Kowalski*,
2015 IL App (1st) 140021-U ................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................4

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) .................................................................................4

*Cahnman v. SBC Illinois*,
2013 IL App (1st) 113350-U ...............................................................................11

*In re ComEd*,
2001 WL 1033288 (Feb. 21, 2001)........................................................................2

*Commonwealth Edison Co. v. Train*,
649 F.2d 481 (7th Cir. 1980) .............................................................................4, 6

*Delmarva Power & Light Co. v. Pub. Serv. Comm'n*,
508 A.2d 849 (Del. 1986)....................................................................................13

*Diamond v. Gen. Tel. Co.*,
569 N.E.2d 1263 (Ill. App. Ct. 1991) .................................................................15

*Fuller Fam. Holdings, LLC v. N. Tr. Co.*,
371 Ill. App. 3d 605 (2007) ................................................................................13

*Genesis Corp. Sols., LLC v. Shekaramiz*,
2015 WL 8988255 (N.D. Ill. Dec. 15, 2015)........................................................4

*Hartung v. Commonwealth Edison Co.*,
  2016 IL App (3d) 150835-U ..............................................................................................11

*Kindra Lake Towning, L.P. v. Donat Ins. Servs., LLC*,
  2017 WL 622224 (N.D. Ill. Feb. 15, 2017) ........................................................................7

*Kontos v. U.S. Dep't Labor*,
  826 F.2d 573 (7th Cir. 1987) ...............................................................................................3

*Mills v. Esmark, Inc.*,
  544 F. Supp. 1275 (N.D. Ill. 1982) ......................................................................................7

*Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co.*,
  341 U.S. 246 (1951).............................................................................................................12

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003).............................................................................................................4

*Pennington v. ZionSolutions LLC*,
  2013 WL 3895263 (N.D. Ill. July 29, 2013).......................................................................3

*Pennington v. ZionSolutions LLC*,
  742 F.3d 715 (7th Cir. 2014) ....................................................................... *passim*

*State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*,
  2014 IL 116844....................................................................................................................8, 11

*Ratajczak v. Beazley Sols. Ltd.*,
  2014 WL 3057158 (E.D. Wis. July 7, 2014) .......................................................................7

*Sery v. Fed. Bus. Centers, Inc.*,
  616 F. Supp. 2d 496 (D.N.J. 2008) ......................................................................................7

*Sheffler v. Commonwealth Edison Co.*,
  2011 IL 110166....................................................................................................................8, 9, 11

*SRT Enters., Inc. v. Direct Energy Bus., LLC*,
  2011 WL 6379303 (N.D. Ill. Dec. 20, 2011)......................................................................8, 12

*Texas v. U.S.*,
  523 U.S. 296 (1998).............................................................................................................5, 7

*Trump v. New York*,
  592 U.S. 125 (2020).............................................................................................................4

*Tucker v. Illinois Power Co.*,
  597 N.E.2d 220 (Ill. App. Ct. 1992) ....................................................................................15

iii

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439 (1993)........................................................................................................3

*Wisconsin Right to Life State Pol. Action Comm. v. Barland*,
   664 F.3d 139 (7th Cir. 2011) .......................................................................................4

**Statutes**

220 ILCS 5/1-101 ................................................................................................. *passim*

220 ILCS 5/3-116 .........................................................................................................8

220 ILCS 5/8-508.1 .......................................................................................2, 7, 12, 14

220 ILCS 5/9–201.5........................................................................................2, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12.................................................................................................. *passim*

iv

Pursuant to Federal Rule of Civil Procedure 12, Defendant Commonwealth Edison Company ("ComEd") respectfully moves to dismiss Plaintiff Painters DC #30 Realty, LLC's ("Plaintiff's") Class Action Complaint ("Complaint"), Dkt. 1.

## INTRODUCTION

Each of Plaintiff's two counts against ComEd—breach of fiduciary duty (Count III); and violation of the Illinois Public Utilities Act, 220 ILCS 5/1-101 *et seq.* ("PUA") (Count IV)— should be dismissed for at least two independent and critical jurisdictional deficiencies.

*First*, as already recognized by the Seventh Circuit in *Pennington v. ZionSolutions LLC*, 742 F.3d 715, 717 (7th Cir. 2014), there is no justiciable controversy for this Court to adjudicate. As Plaintiff concedes, ComEd has not received—and may never receive—the funds Plaintiff claims. Instead, a series of significant events, which may or may not actually occur, must materialize before ComEd receives any funds. And, even if that hypothetical occurs, ComEd would subsequently need to take or fail to take some action that injures Plaintiff. Plaintiff's counts amount to an impermissible advisory opinion from this Court based on future events that may or may not actually occur.

*Second,* even if the conditions predicate do occur in the future, which is uncertain, this Court does not have jurisdiction over the claims against ComEd, which focus on an alleged duty for ComEd to refund the disputed funds to customers via rates. To the contrary, the ICC has exclusive jurisdiction over any such claims against ComEd should a dispute become a reality.

Further, even beyond these clear jurisdictional deficiencies, Plaintiff's Complaint fails to state a claim against ComEd, warranting dismissal pursuant to Rule 12(b)(6). Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety as pled against ComEd.

1

**BACKGROUND**

Defendant ComEd is a public utility that owns and operates electric transmission and distribution facilities within Illinois, providing retail electric delivery services to approximately four million customers throughout northern Illinois. Between 1974 and 1998, ComEd operated a nuclear power plant in Zion, Illinois ("the Zion plant") under two commercial reactor operating licenses issued by the U.S. Nuclear Regulatory Commission ("NRC"). (*See* Compl. ¶¶ 25–26). In 1998, ComEd permanently ceased operations at the Zion plant. (*Id.*). When a nuclear power plant permanently ceases operations, it must go through a "decommissioning" process during which the plant's facilities and equipment are dismantled, nuclear by-products are safely decontaminated and disposed of or entombed, and land is restored for other beneficial use. *See* 220 ILCS 5/8-508.1(1).

ComEd established two NDTs to pay for decommissioning expenses for the Zion plant.[1] (Compl. ¶ 1). In 1998, the ICC approved ComEd's request to pass on certain decommissioning costs to its customers by charging decommissioning rates. (*Id*. ¶ 32) (citing *Commonwealth Edison Company,* ICC Docket No. 97-0110, Order (Feb. 19, 1998), at § 111.D).

In 2001, as the decommissioning process was underway, ComEd transferred ownership of the Zion plant to Exelon Generation Company LLC ("Exelon Generation"). (Compl. ¶ 8). At the time, Exelon Generation and ComEd were wholly-owned subsidiaries of Exelon Corporation. (Compl. ¶¶ 7, 8). The ICC approved the transfer of assets from ComEd to Exelon Generation, including a transfer of the NDTs. *In re Commonwealth Edison Co.*, ICC Docket Nos. 00-0369, 00-0394 [Cons.], Order (Aug. 17, 2000), *aff'd*, *Abbott Labs., Inc. v. Illinois Commerce Comm'n*, 325 Ill. App. 3d 1188 (Ill App. Ct. 4th Dist. Oct. 4, 2001), *appeal denied*, 198 Ill. 2d 611 (2002).

---

[1] To assure that adequate funds are available for decommissioning, licensees such as ComEd were required to establish an NDT funded by charging customers additional fees. The ICC had exclusive authority to authorize such fees. *See* 220 ILCS 5/9–201.5(a). Upon completion of the decommissioning process, "refunds of any excess … shall be made to ratepayers as soon as practicable after the decommissioning of particular plants." *In re ComEd*, 2001 WL 1033288, at XIII.E (Feb. 21, 2001). Refunds by ComEd are also subject to ICC oversight.

As a result, Exelon Generation assumed the obligation to continue decommissioning the Zion plant. *See Pennington v. ZionSolutions LLC*, 2013 WL 3895263, at \*2 (N.D. Ill. July 29, 2013).

In 2010, Exelon Generation transferred the Zion plant and most of the trust assets to ZionSolutions, the company responsible for the actual decommissioning of the Zion Plant. (Compl. ¶ 34). The transferred assets were moved into new decommissioning trusts, of which ZionSolutions was the beneficiary. (*Id.* ¶ 35). The transfer agreement provided that should there be unspent money in the trusts when the decommissioning is complete, those funds would be returned to Exelon Generation, which in turn would remit them to ComEd for distribution to ComEd's customers. *See Pennington*, 742 F.3d at 715. In 2022, Exelon Generation spun off from Exelon Corporation to become a separate and independent entity: Defendant Constellation Energy Generation, LLC ("Constellation"). (Compl. ℙ 7).

The trust funds have *not* been returned to ComEd, nor does Plaintiff allege anything to the contrary. Rather, the trust funds are actively managed by Constellation (*see* Compl. ℙℙ 39, 41), a separate entity with no corporate relationship with ComEd. ComEd intends to satisfy its obligations and ICC requirements when, and if, any decommissioning trust funds are returned.

## LEGAL STANDARD

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where a defendant challenges subject matter jurisdiction, the plaintiff has the burden to demonstrate jurisdiction. *See Kontos v. U.S. Dep't Labor,* 826 F.2d 573, 576 (7th Cir. 1987). A federal court does not have jurisdiction over advisory actions; there must be a live and justiciable controversy. *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993). A justiciable controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life*

3

*Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). The ripeness doctrine is based on "the Constitution's case-or-controversy requirements as well as discretionary prudential considerations" and requires dismissal of unripe cases. *Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011); *Genesis Corp. Sols., LLC v. Shekaramiz*, 2015 WL 8988255, at *2 (N.D. Ill. Dec. 15, 2015).

Under Rule 12(b)(6), a count fails if it lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). Under Rule 12(b)(6), a district court accepts only well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal,* 556 U.S. at 678; *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d 599, 602–03 (7th Cir. 2009).

## ARGUMENT

### I.    The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) Because There Is No Justiciable Controversy

"Ripeness is a justiciability doctrine designed 'to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)). For both constitutional and prudential reasons, a federal court should not decide cases that do not "reflect a current controversy between adverse parties." *Commonwealth Edison Co. v. Train*, 649 F.2d 481, 484 (7th Cir. 1980); *see also Trump v. New York*, 592 U.S. 125, 131 (2020) (recognizing that the ripeness requirement in part derives from Article III). Under Supreme Court precedent, courts consider two factors in determining ripeness: (1) "fitness of the issues for judicial decision" and (2) "hardship to the parties of withholding court

4

consideration." *Abbott Lab'ys*, 387 U.S. at 149. In this case, both factors warrant dismissal of Plaintiff's claims against ComEd.

As to the <u>first factor</u>, the issue presented by Plaintiff—that ComEd must return excess decommissioning funds to its customers—is not fit for judicial determination. ComEd properly and legally transferred its interest in the NDTs to Exelon Generation (now Constellation) over two decades ago.[2] (Compl. ¶¶ 33–36). It is undisputed that the trust funds have not been returned to ComEd and that Constellation continues to retain such funds. (*Id.* ¶¶ 38–41). As ComEd does not have access to or control over these funds, ComEd obviously cannot return such funds to its customers. Accordingly, this Court should dismiss Plaintiff's claims against ComEd as unripe because they are based on speculative, contingent future events that may never occur. *See Texas v. U.S.*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Indeed, the Seventh Circuit already addressed this issue in the context of *this precise trust fund*. In *Pennington*, ComEd customers filed a class action suit seeking, among other things, immediate distribution of "at least some of the trust funds." 742 F.3d at 717. The Seventh Circuit affirmed dismissal of the suit, holding that the plaintiffs had no judicially cognizable claim and recognizing that any suit against ComEd was premature. *Id*. at 719–21. The Seventh Circuit was clear that "ComEd's customers have rights only to the money, if any, left unspent in the Zion Trust and therefore *returned via Exelon to ComEd* when the decommissioning of the Zion plant has been completed." *Id.* at 718 (emphasis added). This has not occurred, nor has ComEd refused to return any such money if and when received. (*See* Compl. ¶¶ 38–41). Accordingly, "ComEd and its

---

[2] *See also Pennington*, 742 F.3d at 717 ("In 2001, with the permission of the Illinois Commerce Commission… ComEd transferred ownership of the Zion plant, together with the trust assets, to ComEd's parent, Exelon…")). Those trusts were transferred to ZionSolutions, and then back to Exelon Generation, now known as Constellation. (Compl. ¶¶ 7, 34, 39).

customers are out of the picture unless and until there is money left over from the decommissioning." *Pennington*, 742 F.3d at 718.

Moreover, not only has there not been a transfer of funds to ComEd, ***but there has not been a determination that decommissioning is over***. At least the following must occur before Plaintiff has any litigable claim against ComEd:

- Constellation must complete the nuclear decommissioning process at the Zion location;
- Once decommissioning is over, some amount of money would need to remain unspent in the trust designated to fund said decommissioning;
- The assets in the trust would need to be transferred back to ComEd;
- Upon receiving the money, ComEd would need to somehow refuse to return it to ComEd's customers; and
- The ICC would then need to adjudicate Plaintiff's right to a refund and commit some appealable error that would be appropriate for a court's determination.

Those predicate steps have not occurred, and it is pure speculation (and simply wrong) that ComEd would fail to promptly and accurately refund funds to its customers once received. *See Train,* 649 F.2d at 484 (finding issue not fit for judicial review when it was "impossible to determine at [that] point with any degree of certainty whether the [plaintiff] will be injured by future action").

Because ComEd cannot return that which it does not have, and ComEd's customers cannot enforce rights vis-à-vis ComEd until, at a minimum, decommissioning is completed and Zion Trust funds remaining unspent, if any, are actually returned to the corresponding trust, Plaintiff's Complaint against ComEd does not raise issues fit for judicial determination.[3] *See Pennington,* 742 F.3d at 717 (reasoning that any rights of ComEd's customers "are limited to any Zion Trust assets that remain after the decommissioning is completed.").

---

[3] Contemplating a scenario where *Exelon Generation* failed to return the trust assets after decommissioning was complete, the Seventh Circuit observed that the NRC is Congress's "designated policeman of decommissioners," ," that " its regulatory authority embraces every potential malfeasance or misfeasance of assets dedicated to the decommissioning process," and that anyone may petition the NRC to exercise that authority. *Pennington,* 742 F.3d at 719.

With respect to the second factor, Plaintiff suffers no immediate harm from delay. In Plaintiff's claims against ComEd, the only asserted harm is for the return of money, and money can be fully remedied at any time. *See Kindra Lake Towning, L.P. v. Donat Ins. Servs., LLC,* 2017 WL 622224, at *5 (N.D. Ill. Feb. 15, 2017) (finding no hardship from waiting where plaintiff's only alleged losses were money damages that could be fully compensated later). Thus, Plaintiff will suffer no hardship from dismissal at this time.

On the other hand, since no funds have been transferred to ComEd, ComEd would face undue hardship if forced to litigate or satisfy a judgment based on funds not yet calculated or available; indeed, this could be a potential violation of trust terms, which are governed by the ICC. *See* 220 ILCS 5/8-508.1; *Ratajczak v. Beazley Sols. Ltd.*, 2014 WL 3057158, at *3–*4 (E.D. Wis. July 7, 2014) (defendant would suffer hardship if forced to litigate a dispute predicated on certain contingent events that may not arise). Because none of Plaintiff's claims against ComEd are yet fit for judicial consideration, and the hardship to Plaintiff "of biding [its] time is insubstantial," no controversy between Plaintiff and ComEd is ripe for adjudication. *See Texas,* 523 U.S. at 296; *see also Pennington,* 742 F.3d at 718 ("ComEd and its customers are out of the picture unless and until there is money left over from the decommissioning."); *Sery v. Fed. Bus. Centers, Inc.,* 616 F. Supp. 2d 496, 504 (D.N.J. 2008) (dismissing breach of fiduciary duty claim as not ripe where the alleged breach was based on hypothetical events that have not yet occurred); *Mills v. Esmark, Inc.,* 544 F. Supp. 1275, 1290–91 (N.D. Ill. 1982) (same). Therefore, Counts III and IV against ComEd should be dismissed.

## II. This Court Additionally Lacks Jurisdiction Over Plaintiff's Claims Against ComEd Pursuant to Rule 12(b)(1) Based on the ICC's Exclusive Jurisdiction

Even if Plaintiff's claims were ripe, or someday become ripe, this Court lacks jurisdiction over Plaintiff's claims against ComEd because the ICC has exclusive jurisdiction over such claims.

7

*See SRT Enters., Inc. v. Direct Energy Bus., LLC,* 2011 WL 6379303, at *5 (N.D. Ill. Dec. 20, 2011). It is well established that rate-related disputes and claims for reparations against an Illinois utility (i.e., claims that a utility has charged too much) are within the ICC's exclusive jurisdiction. *State ex rel. Pusateri v. Peoples Gas Light & Coke Co.,* 2014 IL 116844, ¶ 20 (dismissing class action claim against gas utility for submitting falsified reports to secure rate increases based on the ICC's exclusive jurisdiction). Here, the ICC has exclusive jurisdiction over Plaintiff's claims against ComEd because (1) Plaintiff seeks reparations in the form of a refund by ComEd of the remaining NDT funds, and (2) granting Plaintiff's requested relief against ComEd would violate the filed rate doctrine, which does not allow a court to review or adjust a filed rate. Accordingly, the Court should dismiss Plaintiff's claims against ComEd based on the ICC's exclusive jurisdiction.

> **A. The ICC Has Exclusive Jurisdiction Over Plaintiff's Requested Relief: Refunds from the NDT Funds by ComEd**

The PUA "created the ICC, which has exclusive jurisdiction over rates under the statute." *MacLeod,* 2024 IL App (2d) 230237, ¶ 21 n.2 (citing 220 ILCS 5/2-101, 4-101). Consequently, the ICC has exclusive jurisdiction over all disputes against public utilities relating to public utility rates and services. *See Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶¶ 41, 53, 55; *see also SRT Enters.,* 2011 WL 6379303, at *4 (noting that Illinois courts "broadly" interpret the ICC's exclusive jurisdiction over rate-related disputes against public utilities). The ICC's exclusive jurisdiction over rates stems from, among other reasons, its specialized knowledge and role in regulation of public utilities. *Sheffler*, 2011 IL 110166, ¶ 40. The PUA defines "rate" broadly to include "*every* individual or joint *rate*, fare, toll, *charge*, rental or other compensation of any public utility . . . *and any rule, regulation, charge, practice, or contract relating thereto*." 220 ILCS 5/3-116 (emphasis added); *see also Sheffler*, 2011 IL 110166, ¶ 41 (quoting 220 ILCS 5/9-252).

8

To determine whether the ICC has exclusive jurisdiction over a claim, "courts focus on the nature of the relief sought rather than the basis for seeking relief." *Sheffler,* 2011 IL 110166, ¶ 50. "[A] claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Id.* ¶ 42. A claim for reparations "must *first* be made to the ICC." *MacLeod,* 2024 IL App (2d) 230237, ¶ 21 n.2 (emphasis added).

In this case, the refund request that forms the basis of Plaintiff's Complaint is unequivocally a "decommissioning rate" over which the ICC has exclusive jurisdiction. In 2000, the ICC approved the transfer of assets from ComEd to Constellation, including the NDTs. *In re Commonwealth Edison Co.*, ICC Docket Nos. 00-0369, 00-0394 [Cons.], Order (Aug. 17, 2000), at 30 ("00-0369").[4] When ComEd transferred the trust funds to Constellation, the ICC explicitly retained jurisdiction over the "operation of [ComEd's] decommissioning cost rider," which includes a mechanism for refunds. *Id* at 30; *In re Commonwealth Edison Co.*, ICC Docket No. 00-0361, Amended Order (Feb. 21, 2001), at 42-43 ("00-0361").[5] The ICC expressly provided that "the [ICC's] approval of the proposed transaction does not limit the [ICC's] jurisdiction over ComEd's assessment of decommissioning charges to ratepayers or the operation of [ComEd's] decommissioning cost rider under the [PUA] …." 00-0369 at 30. After ComEd petitioned the ICC for approval of a revised decommissioning cost rider, which included a proposal for refunding excess trust funds, the ICC determined ComEd must issue refunds in accordance with Section 8-508.1 of the PUA. 00-0361.

---

[4] *aff'd*, *Abbott Labs., Inc. v. Illinois Commerce Comm'n*, 325 Ill. App. 3d 1188, (Ill App. Ct. 4th Dist. Oct. 4, 2001), *appeal denied*, 198 Ill. 2d 611, 770 N.E.2d 217 (2002).

[5] *aff'd*, *Commonwealth Edison Co. v. Illinois Commerce Comm'n, et al.*, 332 Ill. App. 3d 1038, (Ill. App. Ct. 2nd Dist. Aug. 5, 2002) (partly "unpublished"), *appeal denied*, 202 Ill. 2d. 599, 787 N.E.2d 155 (2002).

Additionally, the PUA clearly provides for ICC jurisdiction over refunds by ComEd of NDT funds. According to Section 9-201.5 of the PUA, titled "Decommissioning nuclear power plants; rates,"

> The [ICC] may after hearing, in a rate case or otherwise, *authorize the institution of rate provisions or tariffs that increase <u>or decrease</u> charges to customers to reflect changes in, or additional or <u>reduced costs of</u>,* decommissioning nuclear power plants, including accruals for estimates of those costs, irrespective of any changes in other costs or revenues; provided the revenues collected under such rates or tariffs are used to recover costs associated with contributions to appropriate decommissioning trust funds or to reduce the amounts to be charged under such rates or tariffs in the future. These provisions or tariffs shall hereinafter be referred to as "decommissioning rates."
> \*\*\*
> *The [ICC] may require* that a decommissioning rate contain *provisions for reconciling amounts* collected under the rate with both reasonably projected costs and actual costs prudently incurred. As used in this Section, "decommissioning costs" and "decommissioning trust fund" have the same meaning as in Section 8-508.1 of this Act.
> \*\*\*
> A decommissioning rate authorized by the [ICC] under this Section and the decommissioning cost studies underlying the rate shall be *subject to hearing and review, in a rate case or otherwise*, not less than once every 6 years.

220 ILCS 5/9-201.5(a), (b), (d) (emphases added).

Notably, the Illinois legislature delegated to the ICC jurisdiction over three material aspects of ComEd's decommissioning rates. First, the ICC has jurisdiction to set ComEd's decommissioning rates, *including any decrease* in rates. *See* 220 ILCS 5/9-201.5(a). Issuing a refund to ComEd's customers would clearly "decrease" the rates set by the ICC. Second, the statute gives the ICC—not a court—the ability to require reconciliation of ComEd's rates with actual costs. 220 ILCS 5/9-201.5(b). Third, the ICC maintains ongoing jurisdiction over ComEd's decommissioning rates to review how they line up with actual costs. 220 ILCS 5/9-201.5(d). Because the ICC is required to assess ComEd's decommissioning rates at least every six years, it will necessarily perform the function Plaintiff requests of this Court. By demanding a refund of

10

the remaining trust funds (*see* Compl. ¶¶ 58–67), Plaintiff seeks a determination that ComEd's decommissioning rates should be reduced due to exceeding actual costs. But, the ICC has exclusive jurisdiction over such a reconciliation. 220 ILCS 5/9-201.5(a),(b),(d).

Moreover, by seeking relief in the form of a refund of NDT funds, Plaintiff asserts that it was charged "too much," for decommissioning rates that have not been fully used. (Compl. ¶¶ 1–3, 44, 53, 60–62, 65–67.) This is a textbook reparations claim. *See, e.g., Hartung v. Commonwealth Edison Co.*, 2016 IL App (3d) 150835-U, ¶ 29 (claim that ComEd charged an "excessive or unjustly discriminatory amount [] for the use of its transformer" constituted claim for reparations); *Cahnman v. SBC Illinois*, 2013 IL App (1st) 113350-U, ¶¶ 19, 24 (class action claim for refund of late fees constituted claim for reparations); *Sheffler*, 2011 IL 110166, ¶¶ 4, 55 (class action claims "concerning the adequacy of ComEd services" were claims for reparations); *Pusateri*, 2014 IL 116844, ¶ 19 (class action claim that utility "used fraudulent means to get the State (and others) to pay too much for natural gas" constituted claim for reparations). Accordingly, Plaintiff's claims against ComEd are subject to the ICC's exclusive jurisdiction and should be dismissed.

### B.    The Filed Rate Doctrine Bars Plaintiff's Claims

Under Illinois law, the ICC's exclusive authority over ComEd's rates bars collateral judicial challenges to or adjustments of rates on file with the ICC. This fact is referred to as the "filed rate doctrine." In *South Branch LLC v. Commonwealth Edison Co.*, for example, in response to the plaintiff's argument that it could seek recovery of RICO damages for the overpayment of electricity rates, the Seventh Circuit held that "the filed rate doctrine bars such judicial determinations of reasonable utility rates." 46 F.4th 646, 653 (7th Cir. 2022). The Seventh Circuit reasoned that because "[d]etermining a damages award [] based on the alleged overpayment for

11

electricity would involve asking what the reasonable rate should have been," the dispute was not subject to judicial determination. *Id.*

Plaintiff asks the Court to violate that law by itself setting a refund of the decommissioning rate. Customers are entitled, after decommissioning is complete, to refunds for trust assets exceeding "the amount necessary to pay the nuclear decommissioning costs," *i.e.*, "all reasonable costs and expenses incurred." 220 ILCS 5/8-508.1(a)(2), (c)(3)(ii). But like in *South Branch*, the Court cannot award a refund and/or damages for alleged overpayment of decommissioning costs without the Court determining the "reasonable" decommissioning cost, which is barred by the filed rate doctrine. *See South Branch*, 46 F.4th at 653.[6]

Therefore, because Plaintiff's claims against ComEd request the refund (i.e., adjustment) of ICC-approved decommissioning rates, they raise issues reserved for the exclusive jurisdiction of the ICC and should be dismissed. *See Montana-Dakota Utilities Co. v. Nw. Pub. Serv. Co.,* 341 U.S. 246, 251–52 (1951) ("We hold that the right to a reasonable rate is the right to the rate which the [ICC] files or fixes, and that, except for review of the [ICC's] orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one."); *SRT Enters.,* 2011 WL 6379303, at *3 (dismissing dispute over contract for utility service between utility and customer because ICC has exclusive jurisdiction over such claims).

### III. The Court Should Dismiss Plaintiff's Claims Against ComEd Pursuant to Rule 12(b)(6) For Failure to State a Claim

In addition, the Court should dismiss Plaintiff's claims for breach of fiduciary duty (Count III) and violations of the PUA (Count IV) for failure to state a claim because neither claim pleads factual matter that plausibly alleges the essential elements of the cause of action.

---

[6] Additionally, Section 201.5(b) further gives the ICC jurisdiction to "require that a decommissioning rate contain provisions for reconciling amounts collected under the rate with both reasonably projected costs and actual costs prudently incurred." 220 ILCS 5/9-201.5(b).

**A.      Plaintiff Fails to State a Claim for Breach of Fiduciary Duty (Count III)**

To state a claim for breach of fiduciary duty, a plaintiff must plausibly allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *MacLeod,* 2024 IL App (2d) 230237, ¶ 43. Here, Plaintiff's Complaint is critically and irreparably deficient on each prong.

First, Plaintiff fails to plead a fiduciary duty. Under Illinois law, the only duties that a public utility owe to a ratepayer, relating to rates, are those set forth by statute. *See id.* (holding that plaintiff did not adequately plead ComEd owed fiduciary duty to a ratepayer because "any duty related to rates and charges is statutory"); *see also Delmarva Power & Light Co. v. Pub. Serv. Comm'n,* 508 A.2d 849, 857 n.7 (Del. 1986) ("[T]he general rule is that there is no trust relationship between a utility and its customers."). Here, Plaintiff alleges in a conclusory fashion that "Illinois law made ComEd a fiduciary for the benefit of its customers of any funds held in the NDTs which were not used for decommissioning." (*See* Compl. ℙ 59). Plaintiff is wrong. While the PUA created various obligations for utilities, it did not create such a fiduciary duty. The Seventh Circuit has already determined that ComEd's customers "are not beneficiaries of the Zion Trust." *Pennington*, 742 F.3d at 718. Plaintiff is therefore not owed any fiduciary duties with respect to such trust. *See Aigner v. Kowalski*, 2015 IL App (1st) 140021-U, ¶ 27 (fiduciary duty only owed by trustee to trust beneficiaries); *Fuller Fam. Holdings, LLC v. N. Tr. Co.,* 371 Ill. App. 3d 605, 615 (2007) (fiduciary duty stems from relationship between trustee and beneficiary).

In its Complaint, Plaintiff's conclusory allegations are entirely vague as to the fiduciary duty purportedly owed by ComEd to Plaintiff. Plaintiff simply points to Section 8-508.1 and concludes that because decommissioning is purportedly complete, "ComEd is required to return" the funds to its customers. (Compl. ¶ 60). Tellingly, no court has ever held that Section 8-508.1 imposes any *fiduciary* duty on ComEd, much less one that requires ComEd to "return" funds to its

13

customers that have not been refunded to ComEd. (*See id.* ¶¶ 60-61). To the contrary, Section 8-508.1 requires only that, if and when any remaining NDT funds are refunded to ComEd, ComEd must provide refunds or credits to its customers. 220 ILCS 5/8-508.1(c)(3); *Pennington*, 742 F.3d at 718 ("ComEd and its customers are out of the picture unless and until there is money left over from the decommissioning."). Moreover, Plaintiff's claimed fiduciary duty is nonsensical—it would require ComEd to complete the impossible task of "returning" funds ComEd does not have. Accordingly, Plaintiff fails to adequately plead a fiduciary duty.

Second, Plaintiff has not alleged a *breach* of any alleged fiduciary duty because ComEd has not received any trust assets, let alone refused to distribute them. *Pennington*, 742 F.3d at 718 ("ComEd's customers have rights only to the money, if any, left unspent in the Zion Trust and therefore returned via Exelon [now Constellation] to ComEd when the decommissioning of the Zion plant has been completed."). Section 8-508.1—the sole basis for the alleged fiduciary duty— requires that ComEd provide "refunds or credits" to its customers of the funds that have been "refunded to the public utility" (i.e., ComEd). 220 ILCS 5/8-508.1(c)(3)(ii). Speculation that ComEd will not satisfy its obligations if it someday receives the funds is not an allegation of breach.

Third, Plaintiff fails to allege any factual matter plausibly demonstrating that an alleged breach of fiduciary duty by ComEd proximately caused any injury to Plaintiff. Obviously, proximate causation cannot exist because ComEd cannot return funds it does not possess. Additionally, as Plaintiff does not, and cannot, allege that any funds have been returned to ComEd, Plaintiff's damages—the amount of funds that ComEd has received and failed to return to its customers—are zero. Because any alleged injury depends on a series of future, hypothetical contingencies, it is purely speculative and not proximately caused by ComEd as a matter of law.

14

Therefore, Count III should be dismissed *with* prejudice.  *See MacLeod,* 2024 IL App (2d) 230237, ¶¶ 34, 43, 67.

**B.      Plaintiff Fails to State a Claim for Violations of the PUA (Count IV)**

Similarly, Plaintiff fails to state a claim for violations of the PUA.  To state a claim for violations of the PUA, Plaintiff must allege, among other things, a violation of a specific section of the PUA that proximately caused an injury to Plaintiff not suffered by the general public.  *See Diamond v. Gen. Tel. Co.*, 569 N.E.2d 1263, 1271 (Ill. App. Ct. 1991); *see also Tucker v. Illinois Power Co.*, 597 N.E.2d 220, 522 (Ill. App. Ct. 1992) ("Only violations of the Act or a rule or regulation promulgated thereunder are actionable under section 5-201 of the Act").

In the Complaint, Count IV fails to identify any section of the PUA that ComEd allegedly violated and, instead, makes only conclusory references to "Illinois law" and unidentified "ICC Orders." (Compl. ¶ 65).  Moreover, any attempt by Plaintiff to rely on alleged violations of Section 8-508.1 would fail for the same reasons as Plaintiff's claim for breach of fiduciary duty, including that (i) Section 8-508.1 does not require ComEd to "ensure the return" of funds to customers that have not been refunded to ComEd and (ii) Plaintiff has not pled, and cannot plead, damages proximately caused by such a violation.  *See Pennington*, 742 F.3d at 718.  And, as Plaintiff does not allege an injury not suffered by the general public, Plaintiff fails to state a claim for violations of the PUA.  *See Diamond*, 569 N.E.2d at 1271.  Therefore, the Court should dismiss Count IV with prejudice.

**CONCLUSION**

For these reasons, the Court should dismiss the Complaint against ComEd with prejudice.

Respectfully submitted,


By:    */s/Kal K. Shah*

    Kal K. Shah (ARDC #6275895)
    Caitlin A. Kovacs (ARDC #6313273)
    **Benesch, Friedlander, Coplan & Aronoff LLP**
    71 South Wacker Drive, Suite 1600
    Chicago, Illinois 60606
    Telephone: 312.212.4949
    Facsimile:  312.767.9192
    kshah@beneschlaw.com
    ckovacs@beneschlaw.com

*Attorneys for Defendant Commonwealth Edison Company*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2026, I electronically filed the foregoing

***Commonwealth Edison Company's Memorandum of Law in Support of Its Motion to Dismiss***

***Plaintiff's Complaint*** with the Clerk of the U.S. District Court for the Northern District of

Illinois using the CM/ECF system, which will send a notice of this electronic filing to all

counsel.


*/s/Kal K. Shah*
Kal K. Shah
*Attorney for Defendant Commonwealth
Edison Company*