**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**PAINTERS DC #30 REALTY, LLC**, *on behalf of itself and all others similarly situated*,

Plaintiff,

v.

**CONSTELLATION ENERGY GENERATION, LLC**, *et al.*,

Defendants.

Docket No. 1:25-cv-07176

Honorable Mary M. Rowland

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CONSTELLATION ENERGY GENERATION, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

INTRODUCTION ........................................ 1

I. Plaintiff's lack of a cause of action against Constellation compels dismissal. ........................................ 2

II. *Pennington II* continues to compel dismissal in full. ........................................ 3

A. As in *Pennington II*, NRC's primary jurisdiction continues to compel dismissal. ........................................ 3

B. As in *Pennington II*, Plaintiff continues to lack any legal claim or standing. ........................................ 7

C. Zion's NDTs may lawfully be used for ISFSI-related costs. ........................................ 10

CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Aland v. United States Department of the Interior*, No. 23-2415, 2024 WL 2036115 (7th Cir. May 8, 2024), *cert. denied*, 145 S. Ct. 570 (2024)....................2

*Alarm Detection Systems, Inc. v. Orland Fire Protection District*, 929 F.3d 865 (7th Cir. 2019)....................2, 3

*Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011)....................3

*ComEd v. Illinois Commerce Commission*, 332 Ill. App. 3d 1038 (2d Dist. 2002)....................11

*Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill. App. 3d 318 (2d Dist. 1997)....................9

*Pennington v. ZionSolutions LLC*, 742 F.3d 715 (7th Cir. 2014)....................1, 2, 4, 5, 7, 8, 9, 10

*Pennington v. ZionSolutions LLC*, No. 11-C-4754, 2013 WL 3895263 (N.D. Ill. July 29, 2013), *aff'd*, 742 F.3d 715 (7th Cir. 2014)....................7, 11

*Schilling v. Rogers*, 363 U.S. 666 (1960)....................3

*Spuhler v. State Collection Service, Inc.*, 983 F.3d 282 (7th Cir. 2020)....................3

*Stencil v. Johnson*, 605 F. Supp. 3d 1109 (E.D. Wis. 2022)....................3

**STATUTES**

220 ILCS 5/8-508.1....................10, 11

**ADMINISTRATIVE RULINGS**

*Commonwealth Edison Co.*, No. 97-0110, 1998 Ill. PUC LEXIS 117 (I.C.C. Feb. 19, 1998)....................11

*In re Commonwealth Edison Co.*, No. 00-0361, 2000 Ill. PUC LEXIS 968 (I.C.C. Dec. 20, 2000)....................10, 11

**OTHER AUTHORITIES**

10 C.F.R. § 50.2....................4

10 C.F.R. § 72.3....................4

10 C.F.R. § 72.24....................4

10 C.F.R. § 72.30....................4

10 C.F.R. § 72.40....................4

10 C.F.R. § 72.98 ....................4

10 C.F.R. § 72.100 ....................4

10 C.F.R. § 72.130 ....................4

NRC, Office of Nuclear Reactor Regulation, *Safety Evaluation: Zion Nuclear Power Station, Units 1 and 2; Request for Exemption from 10 CFR 50.82(a)(8)(i)(A); Use of Decommissioning Trust Funds for Management of Spent Fuel* (July 21, 2014), https://www.nrc.gov/docs/ML1403/ML14030A602.pdf ....................6

*Tennessee Valley Authority; Sequoyah Nuclear Plant, Units 1 and 2*, 81 Fed. Reg. 64,212 (Sept. 16, 2016) ....................3, 5

*Zion Solutions, LLC; Zion Nuclear Power Station, Units 1 and 2; Exemption From Certain Requirements*, 79 Fed. Reg. 44,213 (July 30, 2014) ....................6

## INTRODUCTION

Plaintiff cannot dodge *Pennington II*'s on-point holdings: ComEd's millions of customers cannot sue over NDT[1] funds because NRC is Congress' "designated policeman" and customers lack any "legal claim." *Pennington v. ZionSolutions LLC*, 742 F.3d 715, 718-19 (7th Cir. 2014). Plaintiff says *Pennington II* no longer binds because "decommissioning is complete." But as NRC's orders show and Plaintiff concedes, one critical task is *not* done: decommissioning Zion's independent spent fuel storage installation (or "ISFSI"). Faced with this reality, Plaintiff argues that NRC for some purposes distinguishes among *types* of decommissioning ("reactor" versus ISFSI). But saying "decommissioning is complete except for the ISFSI" is just another way of saying "decommissioning is not complete." And terminology aside, none of Plaintiff's arguments changes the dispositive substantive points. First, NRC's oversight endures. That means Plaintiff must "complain to [NRC]" if it believes Constellation cannot use funds for particular purposes. *Id* at 719. Second, Plaintiff is not a beneficiary of Zion's *actual* trust, so it cannot sue in court.

This case is not about whether Constellation must comply with the law. Constellation must and does. It is about whether Plaintiff can force this Court to step into the shoes of federal and state regulators and, indeed, reject their explicit positions. Plaintiff demands that this Court interpret NRC's web of regulations and orders to declare "decommissioning is complete," when NRC's orders say the opposite. Plaintiff says the Court must decree that NDT funds may not be used for Zion's ISFSI, when NRC in 2014 expressly authorized use of NDTs for ISFSI-related costs at Zion (as the ICC also contemplated). And Plaintiff urges an "order of the Court" directing refunds, when the ICC has jurisdiction over ComEd's rates. If the Court agreed to Plaintiff's demands to seize

[1] Capitalized terms and acronyms have the same meaning as in Constellation's opening memorandum. Dkt.55.

control of decommissioning, it would sow confusion in NRC's scheme, risk dissipation of funds pledged to ensure safe disposal of nuclear waste, and endanger NRC's (and ICC's) jurisdiction.

*Pennington II* properly rejected this result and enforced the administrative scheme. If Plaintiff believes decommissioning is complete, contrary to what NRC has thus far ordered, it must go to NRC. If NRC some day determines that decommissioning is complete (which has not occurred) and permissible NDT uses have been exhausted (which has not occurred), and if ComEd fails to return funds (which has not occurred), Plaintiff must bring to the ICC claims that ComEd violated a "duty to ensure that the funds are returned." Dkt.63.12. For these reasons, and because Plaintiff lacks a cause of action against Constellation, the Court should dismiss with prejudice.

## I. Plaintiff's lack of a cause of action against Constellation compels dismissal.

Although *Pennington II* controls, the claims against Constellation must be dismissed before even getting there. Constellation's motion explained that the sole statute Plaintiff appeared to invoke against Constellation, the Illinois decommissioning statute, creates no private cause of action. Dkt.55.14-15. Plaintiff's opposition argues only that the statute allows an implied cause of action against *Northern Trust*. Dkt.63.25-27. As to Constellation, Plaintiff makes just one argument—that it needs no cause of action because it seeks declaratory relief. Dkt.63.9-11.[2]

That is wrong. The Declaratory Judgment Act does not create a cause of action. *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 & n.2 (7th Cir. 2019); *Aland v. U.S. Dep't of the Interior*, No. 23-2415, 2024 WL 2036115, at *3 (7th Cir. May 8, 2024), *cert.*

[2] Nor, anyway, does the Illinois decommissioning statute provide a cause of action against Northern Trust. Plaintiff's arguments regarding the "four elements" governing implied causes of action in Illinois, Dkt.63.26, ignore the most important facts here: that *administrative* enforcement mechanisms are available, and that permitting suits by millions of customers lacking any "legal claim," *Pennington II*, 742 F.3d at 718, would cause disarray and undermine the legislature's purpose of ensuring adequate funds for safe decommissioning. Dkt.55.14-15. Because Plaintiff has abandoned any argument that the Illinois decommissioning statute creates an implied cause of action against Constellation, Constellation will not belabor how those points inform Illinois's test for implied causes of action.

*denied*, 145 S. Ct. 570 (2024). Nor, contrary to Plaintiff's suggestion, does the Act authorize suit without a cause of action. The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Thus, declaratory relief "cannot be pursued without a predicate right of action," *Alarm Detection*, 929 F.3d at 871 n.2, and where "no such right exists …, the plaintiffs cannot proceed" to get a declaration, *Stencil v. Johnson*, 605 F. Supp. 3d 1109, 1121 (E.D. Wis. 2022); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Here, Plaintiff has no judicially remediable right against Constellation.

More: Plaintiff expressly seeks *injunctive* relief and "respectfully suggests" that remedying its injury may require "an injunction that CEG return the money." Dkt.63.12n5. Plaintiff does not show how a declaration (without injunctive relief) against Constellation would remedy any purported injury. So for those reasons, too, Plaintiff's suit against Constellation cannot proceed.[3]

## II. *Pennington II* continues to compel dismissal in full.

Plaintiff also has no answer to how *Pennington II*'s two grounds for dismissal apply here. And Plaintiff is wrong on the merits: Zion's NDTs may lawfully be used for fuel-related costs.

### A. As in *Pennington II*, NRC's primary jurisdiction continues to compel dismissal.

*Pennington II*'s primary jurisdiction holding is unambiguous. The Seventh Circuit explained that NRC's "regulatory authority embraces *every* potential malfeasance or misfeasance of [NDT] assets"; that "[a]nyone can complain" about "misuse of" NDTs; and that "[r]ulings on

[3] Indeed, while Plaintiff claims injury on the theory that customers are entitled to "refund[s]," Dkt.63.11, Plaintiff does not show how any judgment this Court might issue *against any party* would remedy that injury. Refunds would require at minimum (i) a decision from NRC that decommissioning is complete, that Zion's NDTs cannot be used for further work, and that Constellation can drain trust funds "pledge[d] to cover ISFSI costs." Dkt.63.29; *cf. Tennessee Valley Authority; Sequoyah Nuclear Plant, Units 1 and 2*, 81 Fed. Reg. 64,212 (Sept. 16, 2016); and (ii) an order from the ICC agreeing with Plaintiff and authorizing refunds. But Plaintiff here cannot obtain a declaration that binds NRC, as NRC explains. Dkt.49.4-7. And Plaintiff has not even tried to join the ICC (and could not). While Plaintiff avers that it would be "inappropriate to determine at this time" how refunds might issue, Dkt.63.12n5, Plaintiff "bears the burden of establishing … standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020).

decommissioning, including rulings on the financial issues involved …, are within [NRC's] primary jurisdiction." 742 F.3d at 719. When all that is true, a suit concerning NDTs "must be[] … dismissed." *Id.* at 720. And here, all that is just as true as in *Pennington II*.

Plaintiff cannot avoid dismissal with its refrain that decommissioning "is complete." Dkt.63.1, 3, 4, 6, 9, 11, 13, 14, 31-32. To begin, that's just not right. The November 8, 2023 order cited in the Complaint could not be clearer: It discusses, in a passage Plaintiff ignores, "*later decommissioning activities* at the on-site ISFSI" and terminates NRC licenses only "*outside* the boundary of the on-site ISFSI." *Partial Site Release, Zion Nuclear Power Station, Unit Nos. 1 and 2*, at 1-2 (N.R.C. Nov. 8, 2023) ("Nov. 8 Order") (Dkt.55-1 (Ex. B) (emphases added)).[4] The same is clear from the November 16, 2023 NRC letter Plaintiff cites, which refers to "decommissioning *outside the boundary of the on-site ISFSI* [being] complete." Dkt.63-3.1-3. And it is clear, too, from NRC's regulations, which refer to "decommissioning of [the] ISFSI." *E.g.*, 10 C.F.R. §§ 72.3, 72.24, 72.30, 72.40, 72.98, 72.100; *see id.* § 72.130; *accord* Dkt.49.2-3 (describing regulations).

Plaintiff's refrain is also irrelevant. It distinguishes "decommissioning of the ISFSI" from decommissioning "of the reactor" and says NRC interprets one definition of "[d]ecommission"—in 10 C.F.R. § 50.2—to apply only to reactor work. Dkt.63.2. But *Pennington II* was about substance, not form, and did not turn on what *type* of decommissioning was occurring. Completion of decommissioning mattered because once NRC's "regulatory authority" ended, so did its "primary jurisdiction." 742 F.3d at 719-20. Here, Plaintiff does not and cannot dispute that NRC's "regulatory authority" endures over a key portion of Zion (the ISFSI) and the relevant funds. Dkt.63.17-18, 30. NRC agrees it is "the 'designated policeman' of ISFSI licensees." Dkt.49.7.

---

[4] Plaintiff complains that the motions to dismiss "cite[] to materials outside of the Complaint." Dkt.63.2n4. But Plaintiff does not argue that any specific materials cited by Constellation were improper. Plaintiff cannot claim, for example, that this Court may not consider what the NRC order cited in the Complaint *actually says*. Dkt.55.6n2.

This means *Pennington II* compels dismissal—and does so regardless of Plaintiff's *substantive* arguments (which lack merit, as explained below). Those arguments all seek "[r]ulings on decommissioning, including rulings on the financial issues involved." *Pennington II*, 742 F.3d at 719. *Pennington II*'s central holding is that so long as NRC's "regulatory authority" continues, those rulings are for NRC—not "generalist" courts—to address. *Id.*

If this Court instead accepted Plaintiff's invitation and declared NRC oversight has concluded, chaos could result. Plaintiff imagines this Court entering an injunction ordering Constellation to drain trust funds "pledge[d] to cover ISFSI costs" and NRC later somehow "requir[ing] CEG to post its own funds." Dkt.63.29-30 & n.17. But NRC is not so casual with ensuring adequate funding for removal of nuclear waste,[5] and on Plaintiff's theory it is not even clear whether NRC would have "jurisdiction to require" anything of CEG or even to oversee the ISFSI. Dkt.63.30n17. All this is why *Pennington II* held that rulings on decommissioning are for NRC and affirmed the dismissal of a materially identical lawsuit.

Plaintiff also ignores how NRC's oversight encompasses the *specific* issue here. First, NRC approved Zion's 2010 license transfer after Constellation's predecessor disclosed it would retain $25 million of NDTs as "necessary to pay for … spent fuel." Compl. ¶ 36; *see* Dkt.55.5. Second, consistent with that approval, Constellation's NRC reports continue to disclose it is holding NDT funds for Zion's ISFSI. Dkt.55.6, Dkt.55-1 (Ex. C). Third, NRC reviewed and allowed to take effect the trust agreement stating that NDTs may be used for "costs as approved by NRC through an exemption request or otherwise for spent fuel management." Dkt.55.6-7, Dkt.55-1 (Ex. D).

Last, as Plaintiff itself observes, ZionSolutions "requested authority to build the ISFSI in

---

[5] *Cf. Tennessee Valley Authority; Sequoyah Nuclear Plant, Units 1 and 2*, 81 Fed. Reg. 64,212 (Sept. 16, 2016) (NRC order holding that a licensee needed an exemption from NRC even to move around NDT funds from one trust to another).

2012," Dkt.63.14—a request yielding further NRC scrutiny of ISFSI funding. ZionSolutions knew its plans to use NDT funds might be contested: the *Pennington* litigation was unfolding, and the plaintiffs argued that ZionSolutions could not use NDT funds for ISFSI-related costs. So ZionSolutions sought in 2013, and received in 2014, an NRC order expressly approving the NDTs' use. *Cf.* Dkt.63.29 (Plaintiff's claim that NRC provided no "explicit authorization [relevant] here"). The application was available via NRC's "recordkeeping system," Dkt.63.13n.7, and the order was published in the Federal Register. *Zion Solutions, LLC; Zion Nuclear Power Station, Units 1 and 2; Exemption From Certain Requirements*, 79 Fed. Reg. 44,213 (July 30, 2014). NRC granted the exemption based on ZionSolution's explanation that "accumulation of trust funds for [Zion] was based upon site-specific cost estimates which included costs for the management of spent nuclear fuel" and that the ICC "rejected arguments … that trust fund collections for [Zion] be adjusted to 'remove spent fuel storage costs.'"[6] Neither the *Pennington* plaintiffs—represented by some of the same lawyers as here—nor anyone else challenged that request. If Plaintiff argues that NRC's decade-old position is wrong, it must take up that disagreement with NRC.

Plaintiff's miscellaneous arguments fail too. First, Plaintiff oddly claims that *Pennington II* does not apply because Plaintiff "does not challenge … financial or operational misfeasance" related to decommissioning. Dkt.63.33. But Plaintiff alleges that Constellation is "unlawful[ly]" holding NDT funds that (per Plaintiff) cannot be used for ISFSI-related purposes. *Id.* That is the *same* as in *Pennington*, where plaintiffs complained that ZionSolutions was using NDTs for "preparing … spent fuel for storage." *Pennington v. ZionSolutions LLC*, No. 11-C-4754, 2013 WL 3895263, at *2 (N.D. Ill. July 29, 2013) ("*Pennington I*"). *Pennington II* recognized that those

[6] NRC, Office of Nuclear Reactor Regulation, *Safety Evaluation: Zion Nuclear Power Station, Units 1 and 2; Request for Exemption from 10 CFR 50.82(a)(8)(i)(A); Use of Decommissioning Trust Funds for Management of Spent Fuel* 3 (July 21, 2014), https://www.nrc.gov/docs/ML1403/ML14030A602.pdf.

claims fell within NRC's "regulatory authority" and affirmed their dismissal. 742 F.3d at 719.

Second, Plaintiff appears to suggest that its arguments fall outside of *Pennington II* because they concern "Illinois law." Dkt.63.33. But that argument again cannot be squared with *Pennington II*, where the claim was that "the trust funds [were] being misused in violation of … the Illinois Public Utilities Act and Illinois's common law." 742 F.3d at 718-19.

Third, Plaintiff minimizes ISFSI decommissioning—implying it is some afterthought, "separate" from the rest of the plant. Dkt.63.14. But what matters under *Pennington II* is NRC's continuing "regulatory authority," which concededly persists as to the ISFSI. 742 F.3d at 719. And Plaintiff's atmospheric claims are wrong too. ISFSI decommissioning is critical to allowing NRC to release the site and relinquish its regulatory authority, which is why the ICC planned for ISFSI decommissioning at Zion *in the 1990s*. Dkt.55.4. It is expensive as well, estimated to cost $181.2 million. Decommissioning Funding Status Report, Att. 29, at 1-2 (Mar. 26, 2025) (Dkt.55-1, Ex. C). And Zion's ISFSI is part of, not separate from, the rest of Zion: As NRC's November 8 Order says, the ISFSI is "on-site" and is subject to Zion's "Operating Licenses"—the same general "Part 50" licenses that always covered Zion, including the reactor. Nov. 8 Order at 1-2; *see* Dkt.55.6.

**B. As in *Pennington II*, Plaintiff continues to lack any legal claim or standing.**

*Pennington II*'s second holding is equally clear and compels dismissal. It held that ComEd's customers could not sue because they were "not the beneficiaries of the Zion Trust and ha[d] no contractual relationship with it, ZionSolutions [Zion's then-licenseholder], or BNY Mellon [the trustee], and therefore no basis for asserting legal claims." 742 F.3d at 718. The same is true here: Plaintiff does not allege that it is a beneficiary of the *actual* trust agreements governing Zion's NDTs or that it has a "contractual relationship" concerning them. Nor could it: The "sole beneficiary," *id.* at 718-19, is Constellation, *e.g.*, Dkt.51.1, 8, with ComEd entitled to the remainder

if money is left.[7]

Plaintiff's opposition has nothing to say about that dispositive holding. Nor does it attempt to answer the *reason* that *Pennington II* gave, which again applies: ComEd "has more than three and a half million customers," and on Plaintiff's "theory any or all of them could sue … for breach of trust." 742 F.3d at 718. Different courts could reach different conclusions, disagree with NRC, and even issue injunctions at the behest of these millions of "beneficiaries," injecting chaos into a statutory scheme meant to ensure adequate funds for safe decommissioning.

Plaintiff instead offers two counterarguments, both meritless. The first—the claim that "decommissioning is complete," Dkt.63.31—is wrong and irrelevant. That argument is wrong because decommissioning is not complete and, anyway, that decision is for NRC. *Supra* at 3-7. Plaintiff's "decommissioning is complete" refrain is also irrelevant because it does not change what *Pennington II* held was dispositive: customers "are not the beneficiaries" of the trusts and "have no [relevant] contractual relationship[s]." 742 F.3d at 718. Plaintiff does not explain how the end of decommissioning—an administrative determination made by NRC—could turn ComEd's customers into trust beneficiaries when they were not before. Nor, contrary to Plaintiff's claim, does *Pennington II* support the strange theory that judicially enforceable rights spring from thin air when decommissioning ends. Rather, *Pennington II* says that "ComEd's customers have rights only to the money, if any, left unspent in the Zion Trust and *therefore returned via Exelon to ComEd* when the decommissioning of the Zion plant has been completed." *Id.* (emphasis added). And even leaving aside that no funds have been returned to ComEd, *Pennington II* does not say that those rights are judicially enforceable. It recognizes that enforcement is administrative.

[7] *See* Dkt.55-1.167 (trust making Constellation the beneficiary); Dkt.55-1.171 (identifying Constellation "as Owner"); *cf.* Dkt.55-1.203 ("A Nonqualified Trust shall terminate upon termination by the NRC of that Unit's license.").

Customers must complain to NRC if they want a decree decommissioning is complete. Then, "refunds or credits" must come through rates—which, as ComEd explains, are subject to the ICC's jurisdiction. Dkt.53.7-14.

The second argument—that Plaintiff may sue under Illinois law "whether it is considered a vested beneficiary or a contingent beneficiary," Dkt.63.24—only underscores that Plaintiff is fighting *Pennington II*. That theory, if accepted, would allow *any* customer to sue *any* time over *any* alleged misdeed, before or after decommissioning ends. That is just what *Pennington II* rejected. Plaintiff concedes as much in a footnote, averring that *Pennington II* "is not a definitive statement" of the law. Dkt.63.33n.19. *Pennington II*, however, is binding precedent.

This theory also fails on its own terms. As *Pennington II* held, customers in the eyes of trust law are *no type of* beneficiary, contingent or otherwise: ComEd customers "are not beneficiaries," and "[t]he only beneficiary is Exelon [now, Constellation], the source of the trust money." 742 F.3d at 718; *accord* Dkt.51.5-8.

Plaintiff's own case illustrates what is missing. In *Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill. App. 3d 318 (2d Dist. 1997), the plaintiff was a child identified expressly (albeit "indirectly") as a beneficiary, who could sue to protect a "contingent" interest. *Id.* at 323-24. Here, the Illinois legislature or the ICC *could have* required that the trust agreements make customers express beneficiaries and conferred judicially enforceable rights on every one of ComEd's "more than three and a half million customers." 742 F.3d at 718. But that is not the system they picked, likely because "no reputable firm would have agreed to undertake" decommissioning if it faced such boundless liability. *Id.* The legislature and the ICC instead recognized that the protection for customers would be administrative. NRC would be "the federal regulatory agency responsible for determining that [Constellation] has provided reasonable assurance that funds will be available,"

*In re ComEd.*, No. 00-0361, 2000 Ill. PUC LEXIS 968, at *87 (I.C.C. Dec. 20, 2000), and for overseeing Constellation's compliance, *Pennington II*, 742 F.3d at 719, and the ICC would enforce ComEd's duties, including its duty to refund via rates any excess.

**C. Zion's NDTs may lawfully be used for ISFSI-related costs.**

Plaintiff is also wrong that Zion's NDTs may not be used for ISFSI costs. Because that issue is for Congress's "designated policeman" to decide, 742 F.3d at 719, we will be brief.

As to federal law, Plaintiff concedes that NDT funds may be used for ISFSI-related costs with NRC approval. Dkt.63.17-18 (acknowledging "exemption" process); *supra* at 4. NRC has provided that approval at Zion—and elsewhere too. Dkt.55.3; *supra* at 5-6. NRC also permitted Zion's trust agreement stating that NDTs may be used for "costs as approved by NRC through an exemption request or otherwise for spent fuel management." Notice of Trust Amendment, Att. 2, Ex. 1, at 8 (Feb. 23, 2022) (Dkt.55-1, Ex. D).

As to state law, two points are dispositive. First, ISFSI-related costs are "[d]ecommissioning" costs under Illinois law, which encompasses the "series of activities" necessary to ensure that "disposal of the plant, including the plant site, and of any radioactive components and materials associated with the plant" occurs "in compliance with … applicable … laws" and "such final disposition does not pose any threat to the public health and safety." 220 ILCS 5/8-508.1. Plaintiff ignores this definition, but ISFSI-related costs plainly qualify. The ICC agreed; otherwise, it could not have approved including these costs in funding estimates. Dkt.55.4.

Second, as to Zion in particular, the ICC rejected "an adjustment to remove spent fuel storage costs from ComEd's estimates." *In re ComEd*, 2000 Ill. PUC LEXIS 968, at *54. While Plaintiff shrugs off this statement as "vague," Dkt.63.18, 20, it is not. Here is what happened, which Plaintiff's memorandum obscures:

- The ICC initially allowed utilities to include fuel-related costs. It thus understood, as just explained, that such costs cover "decommissioning" under the Illinois statute. Dkt.55.10.

- Then, after litigation against the Department of Energy began, the ICC adopted a different approach and declined to accept the "inclusion of [ISFSI-related] cost[s] … *at this time*," citing a then-pending issue at the D.C. Circuit. *ComEd*, No. 97-0110, 1998 Ill. PUC LEXIS 117, at *24-25 (I.C.C. Feb. 19, 1998) (emphasis added). The ICC contemplated, however, that "ComEd may petition" regarding ISFSI-related costs "[a]fter the Court has resolved the issue." *Id.* at *22. This is what Plaintiff cites.

- Finally, ComEd took up the ICC's invitation, reraised the issue, and obtained approval of "updated estimates" that included "spent fuel storage costs" in "ComEd's estimates" for Zion. 2000 Ill. PUC LEXIS 968, at *54. Plaintiff relies on a separate section of this order recounting that "ComEd ha[d] not asked for [storage] costs" *as to other plants*. *Id.* at *85.

Because Zion's cost estimates included ISFSI-related costs and Constellation continues to incur such costs, Constellation cannot have a duty to provide refunds. That conclusion again accords with *Pennington I*, which explained—in a passage Plaintiff ignores—that "[b]efore [the licensee] can return any excess funds …, the federal government must [dispose] of any stored nuclear fuel pursuant to a standard contract"—and "[d]ecommissioning cannot be completed until the federal government performs this remediation." 2013 WL 3895263, at *2 & n.4.[8]

## CONCLUSION

The Complaint should be dismissed with prejudice.

[8] Plaintiff briefly argues that Constellation cannot use Zion's NDT funds because Constellation's costs "are not 'liabilities of the public utility'"—*i.e.*, ComEd—"as is required by 220 ILCS 5/8-508.1(c)(3)(i)." Dkt.63.21. That argument, if accepted, would imply Constellation could never have used Zion's NDTs to pay for anything. In fact, the Illinois appellate court rejected that same argument in 2002. *ComEd v. Illinois Com. Comm'n*, 332 Ill. App. 3d 1038, 1051 (2d Dist. 2002). Plaintiff also incorrectly argues that ISFSI-related costs cannot qualify because Constellation "maintains that all spent fuel storage costs are a liability of the U.S. Government." Dkt.63.21. Constellation still must incur those costs, even if it also believes that the Department of Energy must reimburse them.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Zachary C. Schauf*
Zachary C. Schauf (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
(202) 639-6000
zschauf@jenner.com

Nicole Allen (Ill. Bar No. 6295760)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-5474
(312) 222-9350
nallen@jenner.com

*Attorneys for Constellation Energy Generation, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 20, 2026, a true and correct copy of foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will provide notice to all counsel of record.

*/s/ Zachary C. Schauf*
Zachary C. Schauf